UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JESSE LEE ZEIGLER,<br>Defendant. | Case No. 15-cr-00347-JST-1<br><br>**ORDER GRANTING EMERGENCY MOTION FOR COMPASSIONATE RELEASE**<br><br>Re: ECF No. 55 |

Before the Court is Defendant Jesse Lee Zeigler's motion for compassionate release. ECF No. 55. The Court will grant the motion.

On May 27, 2016, Zeigler pleaded guilty to aiding and abetting robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a). ECF No. 42. On October 28, 2016, the Court sentenced Zeigler to 120 months of imprisonment and three years of supervised release and to pay restitution to the victims of the robbery. ECF No. 49. Zeigler is 41 years old, and is currently in custody at Lompoc FCI in Lompoc, California with a projected release date of November 29, 2023. ECF No. 59 at 5.

On August 26, 2020, Zeigler submitted a motion *pro se* pursuant to 18 U.S.C. § 3582 seeking compassionate release from custody to home confinement. ECF No. 55. He bases his motion on his suffering from a number of health conditions, including those that "put him at a significant risk of a sever[e] illness or death if he contracts COVID-19." *Id.* at 2. Zeigler contends that his model behavior while incarcerated and the harmful conditions at Lompoc also support his release. *Id.* at 3, 5; ECF No. 69 at 10-12. The government filed an opposition to this motion, ECF No. 59, to which Zeigler, now represented by counsel, replied, ECF No. 69. On October 21, 2020, with leave of Court, ECF No. 70, the Government filed a surreply in response

1   to new arguments made for the first time in Zeigler's reply brief, ECF No. 73. The Government
2   argues that Zeigler's motion should be denied because (1) his medical conditions do not present an
3   extraordinary and compelling reason warranting release, ECF No. 59 at 14-16; ECF No. 73 at 2-3,
4   and (2) he remains a danger to the community, ECF No. 59 at 16-14; ECF No. 73 at 4.

Zeigler brings his motion under "the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), which added a provision to allow defendants, not only the Director of the [Bureau of Prisons ('BOP')], to file a motion for reduction of sentence." *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1088 (N.D. Cal. Mar. 25, 2020). The Court may order the modification of an imposed prison sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons" warrant a modification, so long as the adjusted sentence remains "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). While "[g]eneral concerns" about the COVID-19 pandemic may be insufficient to establish "extraordinary and compelling reasons" for a sentence modification, *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1086 (N.D. Cal. Mar. 25, 2020), the parties do not dispute that "the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason" to grant a motion for compassionate release, ECF No. 59 at 14. Here, Zeigler and the Government disagree about the extent of Zeigler's existing medical conditions. *Compare* ECF No. 55 at 5; ECF No. 69 at 10-12, *with* ECF No. 59 at 14-16; ECF No. 73 at 2-3.

Although the Government disputes that Zeigler suffers from asthma, chronic kidney disease, or hypertension, ECF No. 73 at 2-3, the parties agree that "[Zeigler] is obese . . . and therefore is *at increased risk* of severe illness from coronavirus," *id.* at 2 (emphasis in original).[1]

---

[1] Despite this acknowledgement of Zeigler's higher risk for severe illness, the Government asserts that the clinical Director at Lompoc "has opined that based on defendant's age and medical conditions he has a 99.98% chance of surviving COVID-19." ECF No. 73 at 2. However, the Director explains that this conclusion is "evidenced at the website, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html." *Id.* at 7. Although

This Court and others have concluded that similarly severe health conditions in conjunction with the COVID-19 pandemic present "extraordinary and compelling reason" to reduce a defendant's sentence. *See, e.g.*, *United States v. Moli*, No. 14-cr-00487-JST, ECF No. 45 (N.D. Cal. Oct. 13, 2020); *United States v. Coan*, No. 16-cr-00504, 2020 WL 4592828, at *2 (N.D. Cal. Aug. 7, 2020); *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (listing cases which have "granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19"); *United States v. Burrill*, No. 17-cr-491-RS, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (granting motion for immediate release where the defendant "has effectively demonstrated a nexus between his medical conditions and the ongoing pandemic which supports a reduction under section 3582").

The only case the Government cites in support of its argument that Zeigler has not presented an extraordinary and compelling reason warranting release is *United States v. House*, No. 14-CR-00196-CRB-1, ECF No. 2202 (N.D. Cal. May 20, 2020). ECF No. 59 at 14; *see also* ECF No. 73 at 1-3. But in *House*, the court found that defendant's underlying conditions were "under control" in part because defendant "acknowledge[d] that he does not meet the CDC's definition of obesity." *House*, No. 14-CR-00196-CRB-1, ECF No. 2202 at 4. The other cases the Government relies on involved defendants who had significant time left on their original sentences. *See* ECF No. 59 at 18 (citing *United States v. Shayota*, No. 15-CR-00264-LHK-1, ECF No. 780 (N.D. Cal. May 26, 2020) (denying compassionate release for defendant who served less than 6% of his custodial sentence); *United States v. Furaha*, No. 09-CR-00742-JST-1, ECF No. 26 (N.D. Cal. May 8, 2020) (denying compassionate release for defendant who served roughly 20% of his sentence)). By contrast, Zeigler has served over 60% of his imposed sentence and his release date is November 29, 2023. ECF No. 69 at 13, 15. If Zeigler is released at the beginning

---

this website presents planning scenarios "that are designed to help inform decisions by public health officials who use mathematical modeling," it emphasizes that the numbers "[a]re *not* predictions of the expected effects of COVID-19" and do not take into account "underlying health conditions that may contribute to a higher frequency of severe illness." Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited Oct. 22, 2020) (emphasis in original).

of November, his sentence will be reduced by roughly 37 months, or 31% of his original sentence.

The Government also argues that Zeigler "has a very low risk of contracting COVID-19" because Lompoc FCI currently "has only three staff with active COVID-19," ECF No. 73 at 2, but this argument elides the full history of Lompoc's experience with the pandemic, which includes having 730 recovered inmates, 16 recovered staff, and two inmates deceased from COVID-19, *see* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 22, 2020).[2] Lompoc was the site of "one of the most serious COVID-19 outbreaks in the nation," *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020), and has one of the highest numbers of overall reported COVID-19 cases of any federal facility, *see* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited Oct. 22, 2020). The "significant measures [taken] to protect the health of inmates" that the Government describes were insufficient to prevent the spread of COVID-19 at Lompoc. ECF No. 59 at 15. Thus, notwithstanding the current infection numbers at Lompoc FCI, the combination of Zeigler's obesity and the risk of contracting COVID-19 there constitute an extraordinary and compelling reason for compassionate release.[3]

The Government's remaining argument in opposition to Zeigler's motion is that Zeigler remains a danger to the community, largely due to the severity of his conviction and his criminal

---

[2] This may understate the total number of COVID-19 cases that have been confirmed at Lompoc FCI. *See United States v. Head*, No. 2:08-CR-00093-KJM-2, 2020 WL 31180149, at *5 (E.D. Cal. June 15, 2020), *as amended* (July 1, 2020) (citing the same website as "reporting 886 inmates 'recovered,' 1 inmate testing positive, 7 staff testing positive, and 2 inmates deceased"); *see also* Pandemic Response Report 20-086, *Remote Inspection of Federal Correctional Complex Lompoc* at 14 (July 2020) ("[A]s of May 13, over 900 Lompoc inmates had contracted COVID-19 and we determined that only 8 inmates had been transferred to home confinement in accordance with . . . BOP guidance.").

[3] While the Court does not rely on this factor in granting compassionate release, it is a fact that the compassionate release of prisoners from Bureau of Prisons custody reduces inmate density and thereby lowers the risk of COVID transmission for BOP inmates, staff, and the community at large. *See* Ctrs. for Disease Control and Prevention, "Interim Guidance on Management of Coronavirus Disease 2019" https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Oct. 28, 2020) (emphasizing the importance of social distancing for reducing transmission of the virus); *see also* "Incarceration And Its Disseminations: COVID-19 Pandemic Lessons From Chicago's Cook County Jail," Health Affairs (June 4, 2020), https://www.healthaffairs.org/doi/10.1377/hlthaff.2020.00652 (last visited Oct. 28, 2020).

history. ECF No. 59 at 16-14; ECF No. 73 at 4. The United States Sentencing Guidelines policy statement for a reduction in term of imprisonment under Section 3582(c)(1)(A) states that the court should only reduce a prison sentence if "the defendant is not a danger to the safety of any other person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13(1)(B)(2) (U.S. Sentencing Comm'n 2018).[4] The Court acknowledges Zeigler's criminal history, which led in part to the custodial sentence he received. However, Zeigler has had no infractions or incident reports during his time in custody. ECF No. 59 at 16; ECF No. 69 at 14. He also took advantage of BOP programming available to him before the pandemic "to better himself and develop work skills for life after prison." ECF No. 55 at 3. Among other programs, Zeigler has successfully completed Anger Management Group Therapy and three programs offered by the Alternatives to Violence Project, including both basic and advanced courses in nonviolent conflict resolution. ECF No. 55 at 13, 17-21. The Court finds that in light of Zeigler's commitment to rehabilitation while incarcerated, his health, and the conditions of close supervision that will be imposed upon his release, Zeigler does not pose a danger to the community. A modified sentence would satisfy the need to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

For these reasons, the Court GRANTS Zeigler's motion. Zeigler's remaining time in custody is hereby converted to supervised release with a condition of home incarceration, to be followed by the originally ordered three-year term of supervised release. The Court, in accord with the recommendation of the Probation Office, requires that the first six months of Zeigler's

---

[4] "Courts are split on whether section 1B1.13 continues to control, as it has not been updated since the passage of the First Step Act." *United States v. Burrill*, No. 17-cr-491-RS, 2020 WL 1846788, at *1 n.2 (N.D. Cal. Apr. 10, 2020); *compare United States v. Cantu*, 423 F. Supp. 3d 345, 347-48 (S.D. Tex. 2019), *with United States v. Ebbers*, 432 F. Supp. 3d 421, 429-30 (S.D.N.Y. Jan. 8, 2020). "However, even courts which have found the provision to be outdated have held it continues to provide 'helpful guidance.'" *Burrill*, 2020 WL 1845788, at *1 n.2 (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

5

home confinement be served in a Residential Reentry Center. *See* ECF No. 74 at 1. During the term of home incarceration, Zeigler is ordered to comply with the standard and special conditions of supervised release imposed at the time of the original sentence. In addition to the special conditions adopted by the Court at the time of sentencing, the following special conditions are also imposed: (1) Zeigler must not have any contact with the victims, unless excused by the probation officer; and (2) Zeigler must reside for a period of six months in a Residential Reentry Center and shall observe the rules of that facility.[5]

Zeigler's release shall be set 14 days from the date of this order to allow BOP to quarantine him prior to release.

**IT IS SO ORDERED.**

Dated: October 28, 2020

_____
JON S. TIGAR
United States District Judge

---

[5] The Court has determined not to impose a location monitoring condition, heeding the advice of the Probation Office that "[i]t does not appear a condition of Location Monitoring is necessary." ECF No. 74 at 2.

6